## THOMAS v. CINCINNATI, N. O. & T. P. RY. CO.

(Circuit Court, S. D. Ohio, W. D. April 19, 1899.)

RAILROAD LEASE—CONSTRUCTION—FRANCHISE TAX — PAYMENT — LESSEE'S LIABILITY.

A railroad lease provided that the lessee should pay all taxes, assessments, etc., imposed during the term by any governmental or lawful authority on the premises leased, or on any business, earnings, or income of the same, or "by reason of the ownership thereof"; that the intent of such clause was that all governmental charges on the property, or the income therefrom, capable of enforcement against the property of the corporation owning, or the party leasing, the same should be paid by the lessee, whatever the form of such charge. *Held*, that the interpreting clause did not limit the preceding one, so as to require payment by the lessees of charges on "the property or income thereof" only, but that it was bound to pay a tax imposed on the franchise of the lessor, it being a tax imposed "by reason of the ownership" of the road.

## Application of Receiver to Compel Payment of Taxes.

Samuel M. Felton, the receiver appointed in this case, and now engaged in the operation of the railroad of the defendant company, has filed his intervening petition herein against the trustees of the Cincinnati Southern Railway. He avers that by lease of October 11, 1881, the trustees leased to the defendant company the line of railway known as the Cincinnati Southern Railway, extending from its terminus in Cincinnati, Hamilton county, Ohio, to its terminus in Chattanooga, Tenn. After setting out certain parts of the lease, the petitioner further avers that the board of valuation and assessment of Kentucky, on January 20, 1898, served notice on the petitioner, in conformity with the statute of Kentucky, to show cause why the franchise of the defendant company to use, maintain, and operate a railroad within the state of Kentucky should not be assessed for taxation; that the petitioner appeared, and showed cause against the assessment; and that the board, being of opinion that the franchise of the defendant company was of no value, because the earnings of the railway were consumed in the payment of operating expenses and rent reserved in the lease, refused to assess the franchise for taxation. The petitioner further says that on the 4th of February, 1899, the board of assessment and valuation, being of opinion that the right of the trustees of the Cincinnati Southern Railroad to own and lease the railway in Kentucky was a franchise subject to taxation in Kentucky under the statutes of that state, served notice upon the trustees, addressed to the Cincinnati Southern Railway at Cincinnati, calling upon them to show cause within 30 days thereafter why said franchise to own and lease said railway should not be assessed for the year 1896 in the sum of $5,274,715, for the year 1897 in the sum of $5,179,790, and for the year 1898 in the sum of $5,256,994; that the trustees, without admitting the right of the state

of Kentucky to impose said tax, claim that, under and by virtue of clause 3 of said lease made to them by the defendant company, such taxes are required to be paid by the petitioner, and therefore demanded.that he pay the tax. The petitioner says that, as receiver, he has paid all the taxes imposed by the state of Kentucky upon all the tangible property of said trustees in the state of Kentucky, and upon all rights, privileges, and franchises in any manner granted to the defendant company by the lease, and that there is grave doubt, as he is advised by his counsel, whether the proposed tax upon the franchise of the trustees is such that the defendant company, by the terms of the lease, is compelled to pay, and is such as the state of Kentucky has any authority to impose. The petitioner prays that the trustees may be made parties to the petition, and be required to show cause why the court should not adjudge that the defendant company, and consequently the receiver in this cause, is not required by the terms of the lease to pay the proposed tax.

The trustees make answer substantially admitting the facts averred in the petition, but setting them forth more in detail. They embody the entire lease for the trustees to the defendant company in their answer, and conclude the answer as follows: "The respondents say that, since the execution of the said lease, all taxes, charges, and assessments, of whatsoever kind, nature, or character, levied, assessed, or .imposed in the state of Kentucky, by any governmental or lawful authority thereof, upon the premises leased, or any part thereof, or by reason of the ownership thereof, have been assumed and satisfied by the lessee company. Wherefore these respondents, without admitting the right of the state of Kentucky to impose said tax claim, yet say, as before, that, should said tax be rightfully and lawfully imposed by said board of valuation and assessment, the same is payable by the Cincinnati, New Orleans & Texas Pacific Railway Company, or by said receiver for the time being, under the provisions of the lease as herein set forth; and they pray that this court will order accordingly."

By the first clause of the lease, the trustees of the Cincinnati Southern Railway, with the approval of the trustees of the sinking fund of Cincinnati, grant, demise, and lease to the defendant company, for the term of 25 years from the 12th day of October, 1881, "the line of railway known as the Cincinnati Southern Railway, extending from its terminus in Cincinnati, Hamilton county, Ohio, to its terminus in Chattanooga, in the county of Hamilton, in the state of Tennessee, and which railway is now completed so as to admit of the passage of cars from one terminus to the other, together with all the works and conveniences of the said railway, including 'the offices, stations, shops, sheds, depots, car houses, and other grounds, buildings, bridges, viaducts, fences, culverts, tunnels, water stations, wharves, inclines, yards, telegraph posts, and wires, and the roadbed and superstructure of said railway, with the tracks, turnouts, turntables, and the rights of way belonging to, or hereafter acquired by, said party of the first part, whereon the said and other like works and conveniences used, or to be used, in constructing, maintaining, or operating said railway, may be placed, together with all such rights, privileges, and franchises appertaining to said road, held by said party of the first part, as may be necessary to enable the party of the second part to carry out and perform the provisions of this lease, and to maintain, operate, and conduct the business of said railway." The second clause is as follows: "To have and to hold to the said party of the second part for and during the full term of twenty-five years from the date first above written, the said party of the second part yielding and paying therefor unto the said party of the first part, their successors and assigns, every year, the rents, taxes, assessments, and charges hereinafter specified, and keeping and performing all and singular the covenants and agreements hereinafter set forth, and by said party of the second part to be kept and performed. The annual rent hereby reserved, which the party of the second part covenants and agrees for itself, its representatives and assigns, to pay to the said party of the first part, its successors and assign, in lawful money of the United States of America, at the treasury of the city of Cincinnati, Ohio, payable quarterly on the 12th days of January, April, July, and October, in each and every year of said term hereby granted, shall be the sums following, to wit: During the first period of five years of the term hereby granted, the annual rental of eight hundred

thousand dollars ($800,000); during the second period of five years of the term hereby granted, the annual rental of nine hundred thousand dollars ($900,000); during the third period of five years of the term hereby granted, the annual rental of one million dollars ($1,000,000); during the fourth period of five years of the term hereby granted the annual rental of one million and ninety thousand dollars ($1,090,000); during the fifth period of five years of the term hereby granted, the annual rental of one million two hundred and fifty thousand dollars ($1,250,000). Clause 3. And the said party of the second part further covenants and agrees to pay and discharge, as often as they shall become due, any and all taxes, assessments, duties, imposts, and charges whatsoever which may be levied, assessed, or imposed during the term hereby granted, by any government or lawful authority whatsoever, upon the premises hereby leased, or any part thereof, or upon any business or earnings or income of the same, or by reason of the ownership thereof; it being the true intent and meaning hereof that all governmental charges upon the aforesaid property or income therefrom, which may be imposed by any governmental authority capable of enforcing such charges, through, upon, or against said property, or the corporation owning or the party leasing the same, shall be assumed and satisfied by the party of the second part hereto, however the forms thereof may change during the term hereby granted."

The tax proposed to be assessed by the board of valuation and assessment is imposed under section 4077 of the Kentucky Statutes, which reads as follows:

"Sec. 4077. Every railway company, or corporation, and every incorporated bank, trust company, guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace-car company, dining car company, sleeping-car company, chair-car company, and every other like company, corporation or association, also every other corporation, company, or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, incorporated city, town and taxing district, where its franchise may be exercised. The auditor, treasurer and secretary of state are hereby constituted a board of valuation and assessment, for fixing the value of said franchise, except as to turnpike companies, which are provided for in section four thousand and ninety-five of this article, the place or places where such local taxes are to be paid by other corporations on their franchise, and how apportioned, where more than one jurisdiction is entitled to a share of such tax, shall be determined by the board of valuation and assessment, and for the discharge of such other duties as may be imposed on them by this act. The auditor shall be chairman of said board, and shall convene the same from time to time, as the business of the board may require.

"Sec. 4078. In order to determine the value of the franchises mentioned in the next preceding section, the corporations, companies and associations mentioned in the next preceding section, except banks and trust companies whose statements shall be filed as hereinafter required by section four thousand and ninety-two of this article, shall annually, between the fifteenth day of September and first day of October, make and deliver to the auditor of public accounts of this state a statement, verified by its president, cashier, secretary, treasurer, manager or other chief officer or agent, in such form as the auditor may prescribe, showing the following facts, viz.: The name and principal place of business of the corporation, company or association; the kind of business engaged in; the amount of capital stock, preferred and common; the number of shares of each; the amount of stock paid up; the par and real value thereof; the highest price at which such stock was sold at a bona fide sale within twelve months next before the fifteenth day of September of the year in which the statement is required to be made; the amount of surplus fund and undivided profits, and the value of all other assets; the total amount of indebtedness as principal; the amount of gross or net earnings or income,

including interest or investments and incomes from all other sources for twelve months next preceding the fifteenth day of September of the year in which the statement is required; the amount and kind of tangible property in this state, and where situated, assessed or liable to assessment in this state, and the fair cash value thereof, estimated at the price it would bring at a fair voluntary sale, and such other facts as the auditor may require.

"Sec. 4079. Where the line or lines of any such corporation, company or association extend beyond the limits of the state or county, the statement shall, in addition to the other facts hereinbefore required, show the length of the entire lines operated, owned, leased or controlled in this state, and in each county, incorporated city, town or taxing district, and the entire line operated, controlled, leased or owned elsewhere. If the corporation company or association be organized under the laws of any other state or government, or organized and incorporated in this state, but operating and conducting its business in other states, as well as in this state, the statement shall show the following facts, in addition to the facts hereinbefore required: The gross and net income or earnings received in this state and out of this state, on business done in this state and the entire gross receipts of the corporation, company or association in this state and elsewhere during the twelve months next before the fifteenth day of September of the year in which the assessment is required to be made. In cases where any of the facts above required are impossible to be answered correctly, or will not afford any valuable information in determining the value of the franchises to be taxed, the said board may excuse the officer from answering such questions: provided, that said board, from said statement, and from such other evidence, as it may have, if such corporation, company or association be organized under the laws of this state, shall fix the value of the capital stock of the corporation, company or association, as provided in the next succeeding section and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in this state, or in the counties where situated. The remainder thus found shall be the value of its corporate franchise subject to taxation as aforesaid.

"Sec. 4080. If the corporation, company, or association be organized under the laws of any other state or government, except as provided in the next section, the board shall fix the value of the capital stock as hereinbefore provided, and will determine from the amount of the gross receipts of such corporation, company, or association in this state and elsewhere, the proportion which the gross receipts in this state, within twelve months next before the fifteenth day of September of the year in which the assessment was made, bears to the entire gross receipts of the company, the same proportion of the value of the entire capital stock, less the assessed value of the tangible property assessed or liable to assessment, in this state, shall be the correct value of the corporate franchise of such corporation, company or association for taxation in this state.

"Sec. 4081. If the corporation organized under the laws of this state or of some other state or government be a railroad, telegraph, telephone, express, sleeping, dining, palace or chair car company, the lines of which extend beyond the limits of this state, the said board will fix the value of the capital stock as hereinbefore provided, and that proportion of the value of the capital stock, which the length of the lines operated, owned, leased or controlled in this state, bears to the total length of the lines owned, leased or controlled in this state and elsewhere shall be considered in fixing the value of the corporate franchise of such corporation liable for taxation in this state; and such corporate franchise shall be liable to taxation in each county, incorporated city, town or district through or into which, such lines pass, or are operated, in the same proportion that the length of the line in such county, city, town or district bears to the whole length of lines in the state, less the value of any tangible property assessed, or liable to assessment, in any county, city, town or taxing district."

Harmon, Colston, Goldsmith & Hoadly, for receiver.

W. T. Porter and John R. Sayler, for trustees Cincinnati Southern. Ry. Co.

TAFT, Circuit Judge (after stating the facts as above).    The sections of the statute quoted above, under which it is proposed to levy the tax in this case, have been construed by the supreme court of the United States.    In the case of Adams Exp. Co. v. Kentucky, 166 U. S. 171, 17 Sup. Ct. 527, it was held that, taking the whole act together, and in view of the provisions of Ky. St. §§ 4078–4081, it was evident that the word "franchise" was not employed in a technical sense, and that the legislative intention was plain that the entire property, tangible and intangible, of all foreign and domestic corporations, and all foreign and domestic companies possessing no franchise, should be valued as an entirety, the value of the tangible property be deducted, and the value of the intangible property thus ascertained be taxed under these provisions.    It is apparent, moreover, from a consideration of the opinion filed on the petition for rehearing in 166 U. S. 185–217, 17 Sup. Ct. 604, 607, that, in the judgment of the court, this intangible property consisted of privileges, corporate franchises, and obligations.    Mr. Justice Brewer in that case, speaking for the supreme court, said:

"The franchise to do is an independent franchise, or rather a combination of franchises, embracing all things which the corporation is given power to do, and this power to do is as much a thing of value and a part of the intangible property of the corporation as the franchise to be.    Franchises to do go wherever the work is done.    The Southern Pacific Railway Company is a corporation chartered by the state of Kentucky, yet, within the limits of that state, it is said to have no tangible property and no office for the transaction of business.    The vast amount of tangible property which, by lease or otherwise, it holds and operates, and all the franchises to do which it exercises, exist and are exercised in the states and territories on the Pacific Slope.    Do not these intangible properties,—these franchises to do,—exercised in connection with the tangible property which it holds, create a substantive matter of taxation, to be asserted by every state in which that tangible property is found?"

See, also, Bridge Co. v. Dix, 6 How. 541.

The trustees of the Cincinnati Southern Railway were given a right to construct, maintain, and lease a railway running from Cincinnati south through the state of Kentucky.    They were vested, therefore, with the franchise to construct, own, and lease to an operating company an instrumentality for a public purpose, to wit, a railway. This is the intangible property on which the tax in the sections above quoted is levied, and the question is whether a tax upon such a franchise must be paid by the lessee (the defendant company) under the terms of the lease.    Clause 3 is drawn in as general terms as possible.    It was evidently the purpose to secure to the city of Cincinnati a net rent, without any deduction for taxation arising from its ownership of the Cincinnati Southern Railway.    By clause 3, the lessee agrees to pay all taxes, assessments, duties, imposts, and charges whatsoever which may be imposed during the term, by any governmental or lawful authority, upon the premises leased, or any part thereof, or upon any business or earnings or income of the same, or by reason of the ownership thereof.    And it is recited to be the true intent of this clause that all governmental charges upon the property or the income, imposed by any governmental authority capable of enforcing them, through, upon, or against the property of the corporation owning, or the party leasing, the same,

shall be satisfied by the party of the second part, whatever the form in which such charge may be. The tax against the trustees of the Cincinnati Southern Railway is a tax upon its franchise to construct, own, and lease the railway, and is therefore a tax imposed "by reason of the ownership" of the railway, and so is within the words of clause 3. The latter part of clause 3 (the interpreting part thereof) gives plausibility to the contention that it limits the meaning of the clause to charges "upon the property or income therefrom." Reading the whole clause together, however, I am convinced that the interpreting words were added for the purpose, not of cutting down what had gone before, but for the purpose of enlargement, by a specification that the obligation to pay should exist whether the tax was imposed on the property, or against the corporation owning it, or against the party leasing it; and that the words, "charges upon the aforesaid property or income therefrom," were not intended to limit the meaning, or diminish the scope, of the words, "or upon any business earnings or income of the same or by reason of the ownership thereof." For these reasons, I think the lessee is bound to pay the franchise tax levied against the trustees, if that tax is a valid tax. I do not pass upon the question whether it is a valid tax against the trustees, because that question has not been argued, and no issue is made upon it in the pleadings. If it is deemed by the receiver or trustees to be a question of sufficient doubt to justify litigation, he or they may take such course as they may be advised. Let an order be entered embodying this conclusion, and taxing the costs of this proceeding against the receiver.